J-S61030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF E.J.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.A.S. | No. 1035 WDA 2014 |

Appeal from the Order of May 15, 2014
In the Court of Common Pleas of Cambria County
Orphans' Court at No. 2013 – 1147 IVT

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED NOVEMBER 7, 2014**

In this appeal, J.A.S. ("Father"), appeals the May 15, 2014 order, in which the trial court involuntarily terminated his parental rights to his son, E.J.S. ("Child"), born in October of 2004.  We affirm.

The record supports the following summary of the facts of this case. Child originally lived with Father and S.S. ("Mother") in Ebensburg, Pennsylvania.  Notes of Testimony ("N.T."), 5/14/2014, at 39.  Mother, Father, and Child then lived in Virginia for approximately six months before they returned to Ebensburg.  *Id.* at 39-40.  Due to Father's work, Mother, Father, and Child then moved to Pittsburgh for approximately six months. *Id.* at 41-42.  In either 2005 or 2006, Father left Child with Mother in Pittsburgh and moved back to Cambria County.  *Id.* at 43.  Mother and Father had agreed to a visitation schedule in which Father would see Child

---

[*]     Retired Senior Judge assigned to the Superior Court.

every weekend. However, Mother never returned to pick up Child after the second weekend. *Id.* at 43-44. After that, Child lived with Father and his paternal grandparents. *Id.* at 45. By 2009, Father lived in Nanty Glo, Pennsylvania, while Child continued to live with his paternal grandparents until May 2011. *Id.* at 7, 47.

On May 6, 2011, Child's paternal grandfather ("Paternal Grandfather") died as a result of a brain aneurysm. *Id.* Child's paternal grandmother ("Paternal Grandmother") had a history of health issues and was unable to care for Child. *Id.* On June 22, 2011, the trial court entered an emergency custody order, with Paternal Grandmother's consent, granting Child's maternal grandfather ("Maternal Grandfather") primary physical custody and sole legal custody. *Id.* Paternal Grandmother was granted visitation, including one week during the summer, with Child.

Maternal Grandfather had not seen Father since Paternal Grandfather's funeral in May 2011. *Id.* at 11. Maternal Grandfather also stated that, since Child started living with him, neither Maternal Grandfather nor Child had had any contact with Father, including letters, cards, presents, or phone calls. *Id.* at 8.

On December 13, 2013, Maternal Grandfather petitioned to terminate involuntarily Mother's and Father's parental rights, pursuant to 23 Pa.C.S.A. § 2511(a)(1),(2), and (b). On March 28, 2014, the trial court held an involuntary termination of parental rights hearing. At the request of Father, the trial court granted a continuance as to the determination of Father's

parental rights because Father did not have counsel. On May 14, 2014, a second hearing was held. At the conclusion of that hearing, Father's parental rights were terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1),(2), and (b). On June 16, 2014, Father filed his notice of appeal and concise statement of errors complained of on appeal.[1]

Father presents the following question for our review:

Whether the trial court either abused its discretion or committed an error of law when it granted the Petition for Involuntary Termination of Parental Rights, thereby terminating the parental rights of [J.A.S.]?

Father's Brief at 2.

In reviewing an appeal from the termination of parental rights, we review the order in accordance with the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *In re: R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing

_____

[1]    While the order at issue was entered on the docket on May 15, 2014, the docket indicates that notice was not provided to the parties until May 20, 2014. Because the time in which to appeal does not begin to run until notice is provided, *see In re L.M.*, 923 A.2d 505, 508-09 (Pa. Super. 2007), Father's notice of appeal was filed timely.

court might have reached a different conclusion. *Id.* Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations modified; some citations omitted).

Requests to have a natural parent's rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical, and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to affirm the termination of parental rights, this Court need only agree that grounds to do so pursuant to any one subsection of section 2511(a) have been established. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Therefore, although the trial court found grounds to terminate pursuant to multiple subsections, we will only address section 2511(a)(2). We need not address section (b) because Father has not challenged the trial court's finding that section (b) was satisfied.

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds by clear and convincing evidence, a standard that requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(2), the following three conditions must be met: "(1) repeated and continued

- 5 -

incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re E.A.P.***, 944 A.2d 79, 82 (Pa. Super. 2008) (citations omitted).

Our Supreme Court has held that incarceration cannot be used as a ground for involuntarily terminated paternal rights; rather, it may only be used as one factor in the overall analysis.

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

***In re: Adoption of McCray***, 331 A.2d 652, 655 (Pa. 1975). More recently, the Court held that,

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is capable of providing "essential parental care, control, or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether the "conditions and causes of the . . . refusal cannot or will not be remedied by the parent."

***S.P.***, 47 A.3d at 830.

In the instant case, the three conditions mandated by **E.A.P.** to terminate parental rights have been satisfied. Father has demonstrated a refusal to provide Child with essential parental care, control, or subsistence. As a result, Child lacks essential parental care, control or subsistence from his natural father, and Father's refusal will not be remedied. Father admits that he has spent only three hours with Child over the last three years. N.T. at 25. He made attempts to contact Child by visiting Maternal Grandfather's former residence, reaching out to Maternal Grandfather's nephew, and inquiring with Paternal Grandmother. **Id.** at 29. However, Father claimed he was unable to find Child and made no other effort over the last three years to attempt to determine the Child's whereabouts. Additionally, Maternal Grandfather attempted to contact Father but could not find him, even with Paternal Grandmother's assistance. **Id.** at 8. Father took no action in court for custody or time with Child. **Id.** at 30.

At the time of the second involuntary termination of parental rights hearing, Father had been incarcerated in the Cambria County prison for nineteen months. However, the record does not indicate that Father used any of the resources available to him during his incarceration to attempt to contact Child as the Supreme Court contemplated in **McCray**. Specifically, Father did not attempt to send Child any letters, birthday cards, or presents for either birthdays or holidays. While Father averred that he did not know Maternal Grandfather's new address, Paternal Grandmother was in contact with Child. Father never asked his mother to convey a card or message to

- 7 -

Child. Despite the fact that Father stated that he considered sending a birthday present or a Christmas present to the Child through Paternal Grandmother, Father never actually did so. *Id.* at 33.

Child has begun referring to Maternal Grandfather as his father, and has even started calling him "Dad." *Id.* at 10. Attorney Gary F. Vitko, the guardian *ad litem* appointed by the trial court, interviewed Child, who stated that he could not remember what Father looked like. *Id.* at 58.

At the time of the involuntary termination of parental rights hearing, Father remainded incarcerated in the Cambria County prison and did not have a set release date. *Id.* at 53-55. However, upon his release from jail, Father will not have suitable housing for both himself and the Child during the short term. *Id.* at 21. At the time of the hearing, Father also had not secured employment. *Id.* at 22. There is no evidence that indicates that, but for Maternal Grandfather initiating these proceedings, Father would have taken any interest in providing parental care, control, or subsistence to Child. Father's own testimony indicates that, at best, he made only isolated attempts to get in touch with Child.

Our Supreme Court has stated that a recent showing of interest in a child does not negate the lack of interest in a child over an extended period of time. ***Adoption of Baby Boy A v. Catholic Social Services of Diocese of Harrisburg, Penna., Inc.***, 517 A.2d 1244, 1247 (Pa. 1986). Here, Father has not demonstrated a consistent effort to become a part of the

Child's life. He has not "exercise[d] reasonable firmness in declining to yield to obstacles" in maintaining a relationship with Child. **McCray**, *supra*.

Based upon this analysis, Maternal Grandfather has met his burden of demonstrating by clear and convincing evidence that the elements of 2511(a)(2) have been satisfied. Therefore, the trial court did not abuse its discretion in involuntarily terminating Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2014